**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CATHERINE D.,[1]<br><br>  Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,[2]<br><br>  Defendant. | Case No. 5:18-cv-01045-MAA<br><br>**MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

   Catherine D. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("Defendant," "Commissioner," or "Administration) denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act.  Pursuant to 28 U.S.C. § 636(c), the

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Commissioner Andrew M. Saul for former Acting Commissioner Nancy A. Berryhill.

parties consented to the jurisdiction of a United States Magistrate Judge. (ECF Nos. 14-16.) For the reasons discussed below, the Court affirms the decision of the Commissioner to deny benefits.

I. **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for disability benefits based on numerous physical and mental conditions. The ALJ determined that several of Plaintiff's conditions, including obesity, hypoxia (oxygen deprivation), and sleep apnea, were "severe impairments" as that term is used under federal regulations. (Administrative Record ("AR") 26.)

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "medium work" with postural and environmental limitations. (AR 29.) In doing so, the ALJ concluded that Plaintiff's testimony about her symptoms and limitations was not entirely credible. (AR 32-33.)

At step five of the sequential analysis, a vocational expert identified several jobs that someone with Plaintiff's RFC could perform. (AR 35; *accord* AR 59-60.) From this, the ALJ concluded that Plaintiff was not disabled and denied benefits. (AR 35-36.)

II. **STANDARD OF REVIEW**

A district court must affirm the agency's denial of benefits unless the ALJ's findings are "based on legal error or are not supported by substantial evidence in the record." *Lamear v. Berryhill*, 865 F.3d 1201, 1204 (9th Cir. 2017); *accord Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).

## III. DISCUSSION

On appeal to the district court, Plaintiff alleges the ALJ failed to state an adequate basis for disbelieving her symptom testimony. Plaintiff also contends that her RFC is deficient because (1) it does not include use of an oxygen tank and (2) includes ladder and scaffold climbing provisions that are not supported by substantial evidence.

### A. Facts and Agency Decision

Plaintiff has numerous physical conditions. At issue here is the ALJ's assessment of evidence regarding functional limitations caused by Plaintiff's hypoxia and obesity.

#### 1. Medical Records Regarding Hypoxia

Plaintiff was taken by ambulance to the emergency room after she passed out during the afternoon of August 3, 2016. (AR 830.) She was admitted to the hospital just before midnight. (AR 1004.) Emergency room professionals tested Plaintiff's peripheral capillary oxygen saturation (amount of oxygen in the blood), among other things. Plaintiff's saturation level was 98% on "room air," which is considered "normal." (AR 834.) Plaintiff was discharged from the hospital before noon on August 4. (AR 1004.)

Plaintiff followed up with her treating doctor (Dr. Meltzer) on August 10. She told Dr. Meltzer that she was in the hospital for four days. (AR 825.) Plaintiff also reported that "she was advised her oxygen level had dropped to 73%" and that she "was placed on oxygen and her highest level was 91%." (*Id.*) Dr. Meltzer diagnosed Plaintiff with hypoxia and obesity hypoventilation syndrome and prescribed oxygen supplies. (AR 828.) The doctor's records do not indicate how often Plaintiff was directed to use the prescribed oxygen tank and mask. Dr.

Meltzer also did not provide a medical opinion about Plaintiff's functional capabilities and limitations.

Subsequent medical records included normal respiration and oxygen saturation findings. (AR 1089, 1160, 1225.) One of those normal respiration findings was made when Plaintiff's oxygen tank was non-operational. (AR 1089.) The normal oxygen saturation findings were made by a medical profession who made no notation that Plaintiff was using supplemental oxygen at the time. (AR 1225.)

Plaintiff's sleep study is the only medical evidence of poor respiration and oxygen levels without supplemental oxygen. That study indicated no abnormalities and found that a BiPap was "successful in eliminating most obstructive events as well as snoring." (AR 1186.)

2. Medical Opinions

Dr. Ustaris examined Plaintiff in September 2016. Plaintiff told the doctor that she had a history of ovarian cancer and was scheduled to receive chemotherapy the next month. (AR 1086.) She also told him that she had been diagnosed with hypoxia and began oxygen supplementation the previous month. (*Id.*)

Plaintiff brought her oxygen tank to the examination. Dr. Ustaris tested the nasal cannula. The doctor reported that "nothing was coming out from it." (AR 1089.) The doctor also wrote that he "observed that [Plaintiff] does not have shortness of breath and does not seem to have problem breathing." (*Id.*) Dr. Ustaris opined that Plaintiff could do medium work and should avoid extremes in temperature, dust, odors, fumes and other pulmonary irritants. (*Id.*)

Two agency non-examining doctors generally agreed with the medium exertional limitations assessed by Dr. Ustaris. However, they opined that Plaintiff was limited to frequent postural activities, except for climbing ladders, ropes, and

scaffolds. The non-examining doctors opined that Plaintiff could do those activities only occasionally. (AR 71-72, 87-88.)

Plaintiff does not challenge the ALJ's assessment of the medical opinions in her case.

### 3. Plaintiff's Testimony

Plaintiff testified that her physical conditions prevented her from working. She claimed to have "two broken vertebrae" as the result of a car accident and fibromyalgia pain. (AR 51-52.) Plaintiff alleged that she had been using an oxygen tank 24/7 since August 2016. (AR 53.) She also claimed that she had periodically used a wheelchair since August 2016 "because [she] was really tired . . . [and] got really short of breath." (*Id.*)

### 4. The ALJ's Decision

The ALJ assessed a medium exertion RFC. In the written decision, the ALJ expressly gave "significant weight" to all of the doctors who rendered medical opinions, noting that "[t]he opinions of all of these physicians are generally consistent in that they all assess the claimant is able to perform a range of work at the medium exertional level with some differences in the degree of specific function-by-function limitations." (AR 33.)

The RFC determined by the ALJ is a combination of the most Plaintiff-favorable restrictions assessed by Dr. Ustaris and the non-examining doctors. Of importance here, the RFC included a provision that Plaintiff could "occasionally climb ladders and scaffolds." (AR 29.) The RFC did not provide for use of an oxygen tank during the work day.

The ALJ did not believe Plaintiff's extreme symptom allegations, including her claim that she required an oxygen tank at all times. The ALJ wrote the following:

> [T]he record reflects that the claimant has made
> inconsistent statements regarding matters relevant to the
> issue of disability. For example, the claimant attended the
> internal medicine consultative examination alleging that
> she had cancer requiring chemotherapy treatment, which
> was simply a lie. There is no objective medical record to
> even support cancer, much less scheduling of
> chemotherapy treatments. Additionally, the claimant told
> Dr. Ustaris, as well as the undersigned, that she required
> 24/7 use of oxygen; however, Dr. Ustaris found the
> claimant's oxygen tank non-operating.

(AR 32-33 (citations omitted).)

The ALJ also listed additional inconsistencies and verifiably false claims Plaintiff made to her doctors and in her testimony to the agency, including her fibromyalgia claims and statements about her allegedly broken back. (AR 33.) In determining which of Plaintiff's conditions were severe, the ALJ noted that there is no mention of fibromyalgia, trigger point testing, or other recognized signs and symptoms of fibromyalgia documented in Plaintiff's medical records. (AR 26-27.) The ALJ also wrote that "all x-rays taken after the accident were negative and there are no follow-up records to support any limitations or complaints of musculoskeletal pain after the motor vehicle accident." (AR 27; *see also* AR 1224-42.) The ALJ concluded that the collective discrepancies "diminish the persuasiveness of the claimant's subjective complaints and alleged functional limitations." (AR 33.)

### B. Relevant Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Laborin*

*v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (same). If the ALJ rejects significant probative evidence, the ALJ must explain why. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *Willyard v. Colvin*, 633 F. App'x 369, 371 (9th Cir. 2015) (same).

The RFC must include all of a claimant's functional limitations that are "supported by, and consistent with, substantial record evidence." *Rios v. Berryhill*, 707 F. App'x 867, 868 (9th Cir. 2017) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)). The RFC (and any resulting hypothetical presented to a vocational expert) "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quotation omitted, emphasis in original).

An ALJ cannot "arbitrarily discredit a claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In the absence of proof of malingering, an ALJ may reject a litigant's believability only by identifying "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). An ALJ does this by identifying which testimony was not credible and explaining the evidence that contradicted the testimony. *Laborin*, 867 F.3d at 1155 (citation and quotations omitted).

An ALJ may use "ordinary techniques of credibility evaluation" when determining whether to accept a plaintiff's subjective symptom statements, including consideration of the claimant's reputation for truthfulness and inconsistencies with the record. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. 2019) (same). Although an ALJ may consider whether there is a lack of objective medical evidence supporting a claimant's allegations, this factor "cannot form the sole basis" for

discounting subjective symptom testimony. *Burch*, 400 F.3d at 681; *Davis v. Berryhill*, 736 F. App'x 662, 665 (9th Cir. 2018).

### C. Analysis

None of Plaintiff's arguments demonstrates reversible error in the ALJ's credibility finding or assessment of the RFC.

#### 1. Credibility Finding (Issue 2)

Plaintiff contends that the ALJ failed to identify which testimony he didn't believe and improperly relied solely on lack of supporting objective medical evidence to reject Plaintiff's testimony. (ECF No. 32, at 12.) The Court disagrees. Peppered throughout the written decision are citations to evidence that the ALJ clearly found contradictory to Plaintiff's claim that she required supplemental oxygen at all times. (AR 31-32.)

Plaintiff also unconvincingly attempts to lump the ALJ's entire credibility analysis under the umbrella heading of "unsupported by objective medical record." (ECF No. 32, at 13.) Such is a gross mischaracterization. The ALJ could not have stated a more "specific, clear, and convincing" reason for disbelieving Plaintiff's testimony about her oxygen use if he tried. *Trevizo*, 871 F.3d at 678. The ALJ clearly articulated that Plaintiff did not just exaggerate pain or other subjective symptoms; she made verifiably false reports to doctors about her conditions and treatment.

In the written decision, the ALJ discussed the medical findings made during Plaintiff's overnight hospitalization in August 2016. Immediately thereafter, the ALJ wrote that the information provided by the hospital "was completely inconsistent with the claimant's allegations at her office visit days later." (AR 30.) The ALJ also wrote that Plaintiff's report to Dr. Ustaris about her upcoming chemotherapy was "simply a lie." (AR 32.)

8

Those two instances alone, not to mention when coupled with a host of other exaggerated and verifiably false statements noted by the ALJ, reasonably support the ALJ's conclusion that Plaintiff's statements about supplemental oxygen use were not credible. *Biestek*, 139 S. Ct. at 1154. That is about as ordinary of an "ordinary technique of credibility evaluation" as it gets. *Burch*, 400 F.3d at 680; *Evans*, 759 F. App'x at 608. With that conclusion, the ALJ did not err in making broader reference to normal oxygen testing results and lack of tank use documented in the objective medical record. *Burch*, 400 F.3d at 681; *Davis*, 736 F. App'x at 665.

2. <u>RFC Assessment (Issue 1)</u>

Plaintiff argues that "the ALJ's conclusion that [Plaintiff] does not require the use of oxygen simply defies the facts in this case and is not supported by any evidence of record." (ECF No. 32, at 5.) The ALJ did not find that Plaintiff *never* needed supplemental oxygen; he concluded only that Plaintiff did not require a tank at all times (*i.e.*, during the workday) as she claimed. Plaintiff cursorily cites to her sleep study as support for her argument, but she makes no attempt to explain how or why her sleep apnea (which was treated effectively with a BiPap) would require supplemental oxygen during her waking hours. (ECF No. 32, at 5.)

The only support for Plaintiff's claim that she required supplemental oxygen at all times was her testimony, which the ALJ properly discredited for the reasons stated above. The ALJ included breathing-related environmental limitations in the RFC that were supported by Dr. Ustaris's assessment, but the ALJ was not obligated to include an oxygen tank provision that was not supported by or consistent with the evidence. *Rios*, 707 F. App'x at 868 (citing *Bayliss*, 427 F.3d at 1217; *Valentine*, 574 F.3d at 690.

Plaintiff also contends that the limitation "which would contemplate [Plaintiff] climbing scaffolding and/or ladders up to one-third of the work day is

absolutely absurd given her morbid obesity which is consistently documenting [sic] that she weight between 250 and 300 lbs (AR 1168) on a frame of 5'9", in combination with Plaintiff's impairments including hypoxemia, anemia, and chronic fatigue all of which would obviously render her a hazard at unprotected heights such as scaffolding and climbing of ladders." (ECF No. 32, at 5.)

Three doctors who certainly were aware of Plaintiff's size and medical conditions rendered uncontested opinions that Plaintiff was capable of at least occasional climbing of scaffolding and ladders. (AR 71-72, 87-88, 1089.) Such constitutes substantial evidence on which the ALJ reasonably relied in determining Plaintiff's RFC. *Biestek*, 139 S. Ct. at 1154.

Even if the Court assumed error here, the error undoubtedly would be harmless because the jobs accepted by the ALJ at step five[3] do not require the climbing of ladders or scaffolding. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (error in a social security determination is subject to harmless error analysis); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (error is harmless if "it is inconsequential to the ultimate nondisability determination")

The Court finds that the ALJ did not reversibly err in determining Plaintiff's RFC.

///
///
///
///
///

---

[3] See the following Dictionary of Occupational Titles descriptions: *Packager*, DICOT 920.687-014, 1991 WL 687964; *Office Helper*, DICOT 239.567-010, 1991 WL 672232; *Mail Clerk*, DICOT 209.687-026, 1991 WL 671813; *Laundry Worker*, DICOT 361.684-014, 1991 WL 672983; and *Assembler*, DICOT 762.687-022, 1991 WL 680466.

## V. CONCLUSION

The Court concludes that the ALJ's decision is supported by substantial evidence and free of legal error. *Lamear*, 865 F.3d at 1204; *Attmore*, 827 F.3d at 875. The ALJ's decision is AFFIRMED for the reasons stated above.

**IT IS SO ORDERED.**

DATED: August 6, 2019

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE